IN RE APPLICATION OF KATE RESLER, ALSO KNOWN AS KATE
DAVIS, FOR A WRIT OF HABEAS CORPUS.

FILED MARCH 9, 1927.  No. 25779.

1. Habeas Corpus: VOID JUDGMENT. The writ of habeas corpus
is a proper remedy where one is deprived of his liberty by reason
of a void judgment.

2. Criminal Law: ACQUITTAL. In the present case, the defense
interposed of a previous trial and judgment of not guilty entered
thereon by a court of competent jurisdiction for the crime
charged should have been sustained.

3. ———: ABETTOR: INFORMATION. The law as announced in
Scharman v. State, ante, p. 109, holding that the same rule
as to the information, conduct of the case, and punishment,
heretofore applicable to a principal, should thereafter govern
his aider, abettor, or procurer, and that no additional facts need
be alleged in an information against such accessory before the
fact than are required against his principal, followed and ap-
proved.

4. Indictment and Information: HOMICIDE. Information upon which
petitioner was tried and acquitted construed, and held to prop-
erly charge petitioner as principal with the crime of murder
by poisoning; that the words actually employed therein are the
legal equivalent of the statutory language, embracing only as
additional and explanatory thereof that the crime was, in fact,
committed by another, through the procurement of the defend-
ant.

5. Criminal Law: COMPLAINT. Complaint upon which the relator is
now being detained and imprisoned construed, and held to charge
the relator with poisoning with intent to take life under section
9563, Comp. St. 1922, and being, in substance and effect, a charge
of an attempt to commit the crime set forth and charged in the
information upon which the accused was acquitted.

6. ———: VERDICT. Upon an indictment for an offense, the jury
may find the defendant not guilty of the offense, but guilty of an
attempt to commit the same, where such an attempt is an
offense.

7. ———: FINAL JUDGMENT. It thus appearing that the charge
now set forth in the complaint upon which the relator is now
being held was, by express provision of statute, made and in-
cluded within the charge set forth in the information upon
which the petitioner was tried and acquitted, the verdict "not
guilty" was therefore in all respects a complete determination
thereof in her favor.

ORIGINAL application for writ of habeas corpus. *Writ allowed.*

*Bernard McNeny, John F. Fults* and *Edward J. Lambe,* for petitioner.

*O. S. Spillman, Attorney General, John Stevens* and *Wade Stevens, contra.*

Heard before GOSS, C. J., ROSE, DEAN, DAY, GOOD, THOMPSON and EBERLY, JJ.

EBERLY, J.

An application to this court was made at a former day for a writ of habeas corpus on the allegation that the plaintiff was then unlawfully imprisoned and detained in the county jail of Furnas county, Nebraska, under the findings and order of the county judge of that county.

On consideration of the application the court was of the opinion that the facts herein recited fairly raised the question whether the county judge, in making the findings and entering the order as an examining magistrate, in a cause then pending before him on December 14, 1926, had not exceeded his power. It therefore directed the writ to issue. To this writ return has been made. The cause has been heard by the court upon the application for the writ (including a transcript of the evidence received, and all proceedings had at the preliminary examination referred to and duly settled and allowed by the county judge and made a part of the proceedings by his order), the respondent's return thereto, and a stipulation of all parties in interest "waiving the presence of the petitioner before" this court.

Disclaiming any assertion of a general power of review over the proceedings of examining magistrates in matters of determining by them "that an offense has been committed, and there is probable cause to believe that the person charged has committed the offense," we proceed to ascertain from an examination of the entire record before us whether, in view of the facts contained therein, the county

court of Furnas county, or the judge thereof, had power to make the findings and enter the order of commitment thereon in this case.

It appears that on March 19, 1926, an information in proper form was filed in the district court for Furnas county, Nebraska, which, omitting formal parts, and appropriate technical terms as to premeditation, malice, and intent, charged the petitioner, Kate Davis, with a violation of section 9544, Comp. St. 1922, by setting forth that on or about the 30th day of August, 1925, "the said Bert M. Davis * * * did * * * give and administer to the said Blanche A. Davis a large quantity of a certain deadly poison called strychnine, sometimes also called strychnia alkaloid," and that "the said Blanche A. Davis * * * did then and there take said poison and swallow the same, * * * by reason and by means of which, * * * on said 30th day of August, 1925, * * * did die; and before said poisoning and murder were committed by the said Bert M. Davis some time during the year 1925, the exact date or dates being unknown to complainant, and in the county of Furnas, and state of Nebraska, one Kate Resler, who is now also known as Kate Davis, did unlawfully, feloniously, wilfully, purposely, and of her own deliberate and premeditated malice, procure, incite, counsel, advise, aid and abet the said Bert M. Davis in the perpetration and commission of said poisoning."

Thereafter, in a district court of competent jurisdiction, to a properly impaneled jury, a trial was regularly had on this information, and at its close, after instructions by the court, and after consideration of the evidence adduced, the jury, on June 27, 1926, in open court, returned a verdict of "not guilty," which verdict was duly accepted and received by the court and entered on the records thereof, and an order thereupon made and entered discharging said jury from further consideration of said cause, and further providing that petitioner "be and is hereby released and discharged."

On November 8, 1926, the county attorney of Furnas county filed a complaint in due form in the county court of

Furnas county which, omitting formal allegations, charged: "That at some time during the year 1925, and prior to the 31st day of August of said year, the exact date being to complainant unknown, in the county of Furnas, and state of Nebraska, one Kate Resler, who is now also known as Kate Davis, and one Bert M. Davis, then and there being, did then and there unlawfully and feloniously confederate and conspire together to commit a felony, to wit, to administer poison to one Blanche A. Davis with the intent to destroy or take the life of the said Blanche A. Davis; and in pursuance of said conspiracy and to effect the object thereof, the said Kate Resler and Bert M. Davis did, in the said county of Furnas, and state of Nebraska, on various dates within the time aforesaid, the exact dates being to complainant unknown, give and administer to the said Blanche A. Davis certain poisons, the exact nature of which are to complainant unknown, with intent to destroy or take the life of the said Blanche A. Davis, and did mix certain of such poisons, the exact nature and name of which are to complainant unknown, in water, food, drink and medicine with the aforesaid intent, and did offer and give the same to the said Blanche A. Davis and induce her to take and swallow the same with the intent of them, the said Kate Resler and Bert M.Davis, to destroy or take the life of the said Blanche A. Davis."

Upon this complaint the preliminary examination now before us was held and resulted in the findings and order of commitment complained of.

That, in this case, the petitioner may properly present the question involved by habeas corpus, we have no doubt. It is firmly established that if a court or a judge thereof which renders a judgment, or who enters an order, has not jurisdiction to perform the act done, either because the proceeding or the law under which it is taken is unconstitutional, or for any other reason the judgment is void, it may be questioned collaterally, and a defendant who is imprisoned under and by virtue of it may be discharged. *In re*

*Havlik,* 45 Neb. 747; *In re Application of McMonies,* 75 Neb. 702; *In re Vogland,* 48 Neb. 37.

In the present case it is true that the ground for habeas corpus was not the invalidity of an act of the legislature under which the petitioner was informed against, but because it was claimed to be a second prosecution for the same offense contrary to the express provisions of our Constitution. In other words, the contention is that the constitutional rights of the defendant were violated by her second arrest and detention for the same offense contrary to the express terms of the Constitution that no person shall be twice put in jeopardy for the same offense. It is difficult to see why a conviction and punishment under an unconstitutional law is more a violation of a person's constitutional rights than an unconstitutional conviction under a valid law. In the first case it is true the court has no authority to take cognizance of the case, but in the second it has no authority to render judgment against the defendant. *Michaelson v. Beemer,* 72 Neb. 761.

In view of the fact that our constitutional provisions were, in fact, intended to secure an absolute immunity and unqualified privilege to a defendant legally acquitted on a criminal charge of never again being subject to further arrest, detention, molestation, or inconvenience based upon that which has been once solemnly determined in his favor, these provisions are certainly limitations on the power of the court to, in any manner, violate or infringe the right thus plainly granted and conferred by the fundamental charter of the state.

In the present case, therefore, the finding that a crime has been committed, if the same be one of which the accused had theretofore been legally acquitted, and the further finding that there was probable cause for believing the petitioner guilty of the same, followed by a mittimus restricting her liberties, was certainly beyond the power of the court and beyond its jurisdiction to enter because it was against the express provisions of the Constitution which bounds and limits all jurisdiction involved. *Hans*

*Nielsen, Petitioner,* 131 U. S. 176; *Ex parte Bornee,* 76 W. Va. 360; *Ex parte Lange,* 18 Wall. 163; *Ex parte Siebold,* 100 U. S. 371; *In re Snow,* 120 U. S. 274.

It follows, therefore, that habeas corpus is the proper remedy in the instant case, and properly presents the question of the validity of the proceedings against the petitioner and the legality of her present imprisonment.

The record before us discloses that at the preliminary examination, excepting certain evidence of a strictly cumulative character, all of the proof presented to the examining magistrate had been heard, considered and passed upon by the jury in the trial of petitioner on the charge of murder by poisoning. It also appears without question that the time, place, party, and transactions involved in the information herein set out, and in the complaint above set forth, are in all respects identical. There is no question before us involving disputed facts or conflicting evidence. It is wholly a matter of law.

It is claimed by the respondent, however, that even though the time, place, parties, and the transactions involved be identical, yet in view of legislative action there is involved three distinct crimes: (a) Criminal conspiracy, section 9543, Comp. St. 1922; (b) administering poison with intent to take life, section 9563, Comp. St. 1922; (c) murder by administration of poison or causing the same to be done, section 9544, Comp. St. 1922. That it was competent for the legislature to punish distinct parts of the transaction as separate crimes, and that by reason of the action of the legislature, the three crimes before us being separate and distinct, an acquittal of one could not be the subject or basis of a plea in bar to a criminal charge based upon either of the other two.

Does the above complaint which is the foundation of the proceeding, the validity of which is now challenged, charge, as a separate, distinct, unconnected crime, a conspiracy alone, or, is the offense, described therein, embraced in the charge of murder on which there was an acquittal in the district court?

Conspiracy, as originally known to the English law, was defined as follows: "Conspiracy is a consultation and agreement between two or more, to appeal, or indict an innocent falsely and maliciously of felony, whom accordingly they cause to be indicted or appealed; and afterward the party is lawfully acquitted by the verdict of twelve men; the party grieved may be relieved, and the offender punished two ways. * * * Secondly, by indictment at the suit of the king, the judgment whereof is criminal." Coke's Institutes, part III, 142.

At the time of the adoption of our Criminal Code in 1873 the above was, in substance, incorporated in it, and now appears in section 9736, Comp. St. 1922.

In 1909 a statute relating to blackmail was adopted, which now appears as sections 9579-9583, Comp. St. 1922. The last section, in terms, purports to punish conspiracies concerning blackmail by a maximum penalty of three years in the penitentiary. In 1919 (Laws 1919, ch. 195) under the title "An act relating to conspiracy and to provide a penalty, and to declare an emergency," it was enacted: "If two or more persons conspire to commit any felony or to defraud the state of Nebraska in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy, each of the parties in such conspiracy shall be fined not more than ten thousand ($10,000) dollars or imprisoned in the penitentiary not more than two years, or both." The act last quoted contains no repealing clause and makes no reference to preceding legislation on the subject of conspiracy.

Chapter 89, Laws 1923, provides: "Whoever aids, abets or procures another to commit any offense may be prosecuted and punished as if he were the principal offender." The unquestioned purpose of the last act was to eliminate the common-law distinction between principals and accessories before the fact, and to provide for the punishment and trial of accessories before the fact as principals.

Construing this section last referred to in *Scharman v. State. ante,* p. 109, this court held: "Section 9541, Comp.

St. 1922, as amended by chapter 89, Laws 1923, which provides that an aider, abettor, or procurer, whether present or not, shall be subject to the same prosecution and punishment as his principal, construed to mean: That the same rule as to the information, conduct of the case, and punishment, heretofore applicable to a principal, should thereafter govern his aider, abettor, or procurer, and that no additional facts need be alleged in an information against such accessory before the fact than are required against his principal."

Construing the information upon which petitioner was tried and acquitted, in the light of the principles announced in *Scharman v. State, supra,* we hold it properly charges petitioner as principal with the crime of murder by poisoning. It is true that the charge might have properly been made in the general terms of the statute. But the words actually employed are the legal equivalent of the statutory language, embracing only as additional and explanatory thereof that the crime was, in fact, committed by another "through the procurement," etc., of the defendant. *Scharman v. State, supra; State v. Gleim,* 17 Mont. 17, 31 L. R. A. 294; *People v. Rozelle,* 78 Cal. 84; *State v. Littell,* 45 La. Ann. 655; *Territory v. Guthrie,* 2 Idaho, 432; *People v. Schwartz,* 32 Cal. 160.

The murder charged in the information upon which the petitioner was acquitted was a complete and indivisible offense. By statute, the scope of the accusation evidenced by the information had been extended to include every possible criminal relation to the fact of death that existed at the time of its occurrence. The scope of the charge, indeed, must be measured by the transactions which might be shown to support it. Immunity of acquittal must be commensurate with peril of conviction. For what a verdict of "guilty" might punish, a verdict of "not guilty" must protect.

It must be conceded that the petitioner, by her acquittal, was wholly relieved from any further attempt to fix penalties upon her because of her relation to the fact of killing

In re Resler.

being that of an accessory before the fact. An accessory before the fact, it may be said, is one who, by word or act, gives encouragement to the actual perpetrator in the commission of the act, or who procures, instigates, incites, advises, or counsels him to commit it, or joins with him in a conspiracy to that end, or by aiding him in any of the foregoing ways in some other unlawful act that would naturally result in a homicide if the homicide action results therefrom. 29 C. J. 1067, sec. 40.

But the petitioner is now sought to be held as a conspirator for a completed conspiracy having for its object the death of Blanche A. Davis.

It may be conceded that as to a completed felony, all accessories before the fact, at common law, might or might not be conspirators; but it cannot be denied that in such case all "conspirators before the fact," by the consummation of their conspiracy, became "accessories before the fact."

Our Nebraska statutes, as determined by *Scharman v. State, supra,* now inflict punishment as principal alike on both classes of these offenders. Under our former decision, one could not be convicted as principal if the evidence disclosed he was accessory before the fact; neither could he be convicted as accessory before the fact if the evidence disclosed he was present and a principal. *Casey v. State,* 49 Neb. 403. But since the amendments referred to have been adopted, the scope of possible conviction under the charge contained in the information upon which petitioner was tried has been extended to include as principal all criminal relations to the criminal act charged, whether before denominated as principal or as accessories before the fact.

It follows that, in view of the provisions of the legislation above referred to, that whether present or absent at the time the poison was administered, assuming the crime to have been committed, the charge of conspiracy was within the terms of the information upon which the case was tried, and the evidence establishing the conspiracy would have

been relevant and material for consideration of the jury, and, if believed by them, would have resulted in the conviction of the petitioner of the crime of murder. Therefore, construing the complaint upon which the petitioner·is now detained, as respondent would have it construed, the language of the supreme court of Colorado would appear to be applicable:

"It is evident, therefore, that the facts necessary to show his guilt as accessory before the fact are essential to show him guilty of the conspiracy charged in this indictment. In other words, the criminal conduct that would constitute him an accessory before the fact, where the object of the conspiracy has been consummated, is the same that would prove him a conspirator where the contemplated crime is not completed. It is laid down by Wharton, as a general rule, that 'where the evidence necessary to support the second indictment would have been sufficient to procure a legal conviction upon the first, * * * the plea *(autrefois acquit)* is generally good.' " *Davis v. People*, 22 Colo. 1.

We are, however, convinced that, applying to this complaint in the county court the principles announced in *Scharman v. State, supra,* (which was decided after the complaint in question had been filed), we are forced to accept the construction that the offense charged in the instant complaint is not conspiracy under section 9543, Comp. St. 1922, but poisoning with intent to take life under section 9563, Comp. St. 1922.

It is to be noted in this connection that, while the maximum penalty provided for "conspiracy" is "not more than $10,000 (fine) or imprisonment in the penitentiary not more than two years, or both," the minimum penalty might be one dollar fine and costs. The penalty for poisoning (section 9563, Comp. St. 1922) is imprisonment in the penitentiary not less than two years, nor more than fifteen years. The latter, therefore, is deemed the more serious offense.

In view of the statutory provisions of 1923, we feel it must be conceded that, where a conspiracy is executed or consummated, all conspirators, who at common law were

In re Resler.

either principals or accessories before the fact, are now to be deemed principals. The charge that "the said Kate Resler and Bert M. Davis did, in the said county of Furnas, and state of Nebraska, on various dates within the time aforesaid, the exact dates being to the complainant unknown, give and administer to the said Blanche A. Davis certain poisons, the exact nature of which are to complainant unknown, with intent to destroy or take the life of the said Blanche A. Davis, and mix certain of such poisons, the exact nature and name of which are to complainant unknown, in water, food, drink and medicine with the aforesaid intent, and did offer and give the same to the said Blanche A. Davis and induce her to take and swallow the same with the intent of them, the said Kate Resler and Bert M. Davis, to destroy or take the life of the said Blanche A. Davis," would embrace all acts and relations criminally connected with the offense at or prior to its commission, whether such connection be evidenced by actual or constructive presence at the time of the commission of the crime or by absence and participation as by an accessory before the fact or as a conspirator. *Scharman v. State, supra.*

Therefore, the additional allegation contained in the complaint including the words "Kate Davis and one Bert M. Davis, then and there being, did then and there unlawfully and feloniously confederate and conspire together to commit a felony, to wit, to administer poison to one Blanche A. Davis with the intent to destroy or take the life of the said Blanche A. Davis; and in pursuance of said conspiracy and to effect the object thereof," did commit said crime, must be deemed as explanatory, and that, in truth and in fact, but one offense is actually charged, and that of administering poison with intent to kill. *Scharman v. State, supra.*

There can be no question but where one crime is included and forms a necessary part of another, and is but a different degree of the same offense, and where on a prosecution for the higher crime a conviction may be had for

the lower, then a conviction or acquittal of the higher will bar a prosecution for the lower, or for any crime of which the lower is an essential ingredient. 16 C. J. 271, sec. 449; *Warren v. State*, 79 Neb. 526.

A careful comparison of the information set forth herein and the terms of the complaint later filed, in the light of the statutory provisions upon which they are based, plainly establishes one conclusion, viz, that the information charges the consummated and completed crime which is denounced by the provisions of section 9544, Comp. St. 1922, viz, "administering poison or causing the same to be done" to "kill another;" and that section 9563, Comp. St. 1922, and the complaint drawn thereunder have for their object and purpose the punishment of those who "shall administer poison to another with the intent to destroy or take the life of the person or persons to whom the same shall be administered." Section 9544, Comp. St. 1922, in short, provides for the punishment of the completed and consummated act; section 9563, Comp. St. 1922, provides for the attempt to commit the offense punished by the first.

Section 10153, Comp. St. 1922, provides: "Upon an indictment for an offense * * * the jury may find the defendant not guilty of the offense but guilty of an attempt to commit the same, where such an attempt is an offense."

Thus, the charge now set forth in the complaint was, by express provision of statute, made an included offense of the charge set forth in the information upon which petitioner was tried. Of it she might, without amendment, have been convicted and sentenced as an included offense at the time of her former trial thereunder, and the verdict of "not guilty" was therefore in all respects a complete determination thereof in her favor. *Mulloy v. State*, 58 Neb. 204; *Russell v. State*, 66 Neb. 497.

"There are no maxims of the law more firmly established, or of more value in the administration of justice, than the two which are designed to prevent repeated litigation between the same parties in regard to the same subject of controversy, namely, *Interest reipublicæ ut sit finis litium*,

and *Nemo debet bis vexari pro una et eadam causa."*
*United States v. Throckmorton,* 98 U. S. 61.

It appearing that, as to the charge contained in the complaint, jeopardy attached by virtue of the former trial, and it appearing from the admitted facts of the record that the charge contained in the complaint on which the petitioner is now being detained and imprisoned by respondent, is one upon which jeopardy attached by virtue of the former trial on the information set forth in this opinion, and that petitioner is now and has been unlawfully imprisoned and detained by respondent and is entitled to be forthwith released and discharged: Ordered, that respondent be and he is hereby directed to forthwith discharge and release said Kate Resler, also known as Kate Davis, petitioner.   .

PETITIONER DISCHARGED.

Note—See Criminal Law, 16 C. J. 264 n. 42, 265 n. 48, 271 n. 5, 6—Habeas Corpus, 12 R. C. L. 1192, 6 R. C. L. Supp. 742; 29 C. J. 46 n. 66, 53 n. 28—Homicide 29 C. J. 1068 n. 6, 7, 8, 9, 10, 1069 n. 11, 12, 1073 n. 59.