STATE OF NEBRASKA, APPELLEE, V. DENNIS L. HOFFMAN, APPELLANT.

416 N.W.2d 231

Filed December 11, 1987.   No. 86-944.

Dennis R. Keefe, Lancaster County Public Defender, and Richard L. Goos, Special Deputy Lancaster County Public Defender, for appellant.

Robert M. Spire, Attorney General, and Elaine A. Catlin, for appellee.

BOSLAUGH, C.J., Pro Tem., WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ., and COLWELL, D.J., Retired.

SHANAHAN, J.

As the result of a bench trial in the district court for Lancaster County, Dennis L. Hoffman was convicted of, and sentenced for, three crimes, namely, assault in the second

degree, Neb. Rev. Stat. § 28-309(1)(b) (Reissue 1985), a Class IV felony; motor vehicle homicide, Neb. Rev. Stat. § 28-306(1) and (3) (Reissue 1985), a Class IV felony; and drunk driving, a violation of Neb. Rev. Stat. § 39-669.07 (Reissue 1984) and a misdemeanor. The district court sentenced Hoffman to consecutive terms of imprisonment: 1 year on the assault conviction, not less than 20 months nor more than 5 years on the motor vehicle homicide conviction, and 6 months plus a $500 fine on the drunk driving conviction. We affirm the judgment concerning the assault and motor vehicle homicide charges, but vacate the judgment of conviction and sentence for drunk driving.

MULTIPLE-COUNT INFORMATION

In its three-count information concerning an automobile collision on February 18, 1986, the State charged (count I) that Hoffman, by use of a dangerous instrument, did recklessly cause serious bodily injury to Lana G. Wagner (assault in the second degree, § 28-309(1)(b)); (count II) that Hoffman caused the death of Lana Wagner unintentionally while he was operating a motor vehicle in violation of state law, namely, that Hoffman

did operate or be in actual physical control of a motor vehicle while under the influence of alcoholic liquor or of any drug or when the said Dennis L. Hoffman had ten-hundredths of one percent or more by weight of alcohol in his body fluid as shown by chemical analysis of his blood, breath or urine, or did operate a motor vehicle in such a manner as to indicate an indifferent or wanton disregard for the safety of persons or property,

(motor vehicle homicide, § 28-306(1) and (3)); and (count III) that Hoffman operated a motor vehicle while he was "under the influence of alcoholic liquor or of any drug or when he had ten-hundredths of one percent or more by weight of alcohol in his body fluid as shown by chemical analysis of his blood, breath or urine," contrary to the provisions of § 39-669.07. Therefore, count II (motor vehicle homicide) was based on the alternative allegations of Hoffman's drunk driving (§ 39-669.07) or reckless driving (Neb. Rev. Stat. § 39-669.01 (Reissue 1984)). In count III, the State also alleged Hoffman's

previous convictions for drunk driving.

## THE FATAL COLLISION

According to a witness who was with Hoffman on February 18, 1986, while the two were working together on a car, Hoffman drank at least 2 pints of root beer schnapps between 11 a.m. and 1 p.m. on that date. At approximately 4:30 p.m. on February 18, Hoffman was involved in an automobile accident on Sun Valley Boulevard, a north-south thoroughfare with a speed limit of 45 miles per hour, in Lincoln, Nebraska.

Another witness saw the Hoffman car as it came around a curve from O Street and proceeded north on Sun Valley Boulevard. As that witness watched, Hoffman drove onto a concrete median or lane-divider on Sun Valley, where Hoffman's car struck a metal sign embedded in the median and knocked the sign into the southbound lane of Sun Valley. Hoffman's car continued north at an estimated speed of 65 miles per hour and began its ascent of an inclined viaduct or overpass for Sun Valley. A southbound motorist had to drive at the extreme right to avoid colliding with the accelerating Hoffman car, still headed north.

As it neared the crest of the viaduct, Hoffman's car struck the left rear of a northbound pickup truck driven by Joseph P. Engler. After striking the Engler pickup, Hoffman's car skidded into the southbound lane on Sun Valley and collided head on with a car driven by Lana Wagner. The impact crushed the front end of both vehicles and compressed the driver's area of the Wagner car. As the result of severe injuries received in the collision, Lana Wagner died at the scene. After the collision, root beer schnapps bottles were found in Hoffman's car.

At 5:15 p.m. on February 18, Officer Bassett of the Lincoln Police Department arrived at the hospital to which Hoffman had been taken on account of injuries sustained in the collision, where the officer found Hoffman conscious, alert, and responding to questions from medical personnel. Officer Bassett detected the odor of alcohol on Hoffman's breath and, while reading the "Implied Consent Advisement Form" to Hoffman, noted that Hoffman had difficulty in focusing his watery, reddened eyes. Hoffman was abusive and uncooperative toward the officer, but, nevertheless, Officer

Bassett obtained a sample of Hoffman's blood for testing at the Nebraska State Patrol laboratory. Test results on Hoffman's blood sample showed that Hoffman had thirty-nine hundredths of 1 percent by weight of alcohol in his blood at the time Hoffman's car collided with the Wagner vehicle. Officer Bassett expressed his opinion that Hoffman was intoxicated when the officer contacted Hoffman at the hospital.

The parties stipulated that, if Hoffman were a witness at his trial, he would testify that he did not intend to cause Lana Wagner's death. A National Safety Council publication indicated that a person with a blood-alcohol content of ".40" would "have passed out." As exhibits, appropriate copies of court records showed Hoffman's four previous convictions for drunk driving in violation of § 39-669.07.

## APPLICABLE STATUTES

For an assault in the second degree, § 28-309 provides: "(1) A person commits the offense of assault in the second degree if he or she: . . . (b) Recklessly causes serious bodily injury to another person with a dangerous instrument . . . ."

As a definitional section of the Nebraska Criminal Code, Neb. Rev. Stat. § 28-109(19) (Reissue 1985) contains:

Recklessly shall mean acting with respect to a material element of an offense when any person disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and purpose of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a law-abiding person would observe in the actor's situation.

Regarding motor vehicle homicide, § 28-306 states:

(1) A person who causes the death of another unintentionally while engaged in the operation of a motor vehicle in violation of the law of the State of Nebraska or in violation of any city or village ordinance commits motor vehicle homicide.

. . . .

(3) If the proximate cause of the death of another is the operation of a motor vehicle in violation of section

39-669.01 [reckless driving], 39-669.03, or 39-669.07 [drunk driving], motor vehicle homicide is a Class IV felony.

Section 39-669.01 defines reckless driving: "Any person who drives any motor vehicle in such a manner as to indicate an indifferent or wanton disregard for the safety of persons or property shall be deemed to be guilty of reckless driving."

As a crime, drunk driving is prohibited by § 39-669.07, which, in pertinent part, provides:

It shall be unlawful for any person to operate or be in the actual physical control of any motor vehicle while under the influence of alcoholic liquor or of any drug or when that person has ten-hundredths of one per cent or more by weight of alcohol in his or her body fluid as shown by chemical analysis of his or her blood, breath, or urine.

## CONVICTIONS

The court found Hoffman guilty on each of the information's three counts. Concerning the motor vehicle homicide charge (count II), the court found that Hoffman

caused the death of Lana G. Wagner unintentionally while engaged in the operation of a motor vehicle in violation of the laws of the State of Nebraska in that he (1) was operating his motor vehicle while under the influence of alcoholic liquor and (2) was operating said vehicle when he had more than ten-hundredths of one percent by weight of alcohol in his body fluid, namely .39 of one percent by chemical analysis of his blood.

On count III (drunk driving), the court found that Hoffman operated and was in actual physical control of a motor vehicle while Hoffman was "under the influence of alcoholic liquor or when he had ten-hundredths of one percent or more by weight of alcohol in his body fluid, namely .39 of one percent, as shown by chemical analysis of his blood." After a presentence report, the court imposed sentence on Hoffman for each of the convictions, which sentences ran consecutively.

## ASSIGNMENTS OF ERROR

Hoffman claims that (1) he was intoxicated to such an extent that he lacked mental capacity to form the general intent

required for a second degree assault; (2) the trial court erred in finding Hoffman guilty of both second degree assault and motor vehicle homicide, because the assault, charged in count I, was a lesser offense included in motor vehicle homicide, charged in count II, constituting double jeopardy contrary to the provisions of Neb. Const. art. I, § 12 ("No person shall be . . . twice put in jeopardy for the same offense"), as well as the provisions of U.S. Const. amend. V ("nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb . . ."); (3) the trial court erred in finding Hoffman guilty of motor vehicle homicide and drunk driving, because drunk driving, charged in count III, was a lesser offense included in motor vehicle homicide, charged in count II, constituting double jeopardy contrary to the provisions of the Constitutions, state and federal; and (4) the trial court abused its discretion in imposing consecutive sentences.

The State proposes that Hoffman waived any objection to the multiple-count information regarding greater and lesser-included offenses charged by its several counts because Hoffman did not move to require the State's election on the stated charges. In *State v. Aby*, 205 Neb. 267, 270, 287 N.W.2d 68, 70 (1980), which involved a two-count information charging first degree sexual assault and felonious debauchery, this court stated: "The State was not required to elect between the counts because a crime and a lesser-included offense may be charged in separate counts of the same information." As a result of *Aby*, in Hoffman's case the State was not required to make an election regarding the charges filed, and any motion by Hoffman in that respect, therefore, would have been unavailing. The State then shifts to *State v. Carter*, 205 Neb. 407, 288 N.W.2d 35 (1980), in which this court held that the defense of double jeopardy, as the result of a prior conviction, must be asserted and proved, and, in the absence of such issue raised by the pleadings, the defense of double jeopardy is waived. The State fails to grasp the precise question involving the claim of double jeopardy in this appeal and misunderstands Hoffman's argument. Hoffman is not asserting that it was error to *charge* him with an offense containing a lesser-included offense; rather, Hoffman maintains the trial court erred in

twice convicting him of the same offense, that is, convictions of the greater and lesser-included offenses, arising out of the same transaction—the fatal collision. Hoffman argues that prejudicial error occurred when the district court found Hoffman guilty on the information's various counts, as detailed in the foregoing assignments of error. Consequently, we must address Hoffman's contentions that he was convicted of both greater and lesser-included offenses charged separately in the multiple-count information.

INTOXICATION AND SECOND DEGREE ASSAULT

Hoffman directs our attention to *State v. Duis*, 207 Neb. 851, 301 N.W.2d 587 (1981), a prosecution for second degree assault prohibited by § 28-309(1)(a) (Reissue 1979), which provided: "A person commits the offense of assault in the second degree if he . . . [i]ntentionally or knowingly causes bodily injury to another person with a dangerous instrument . . . ." In *Duis* this court expressed: "Assault with a dangerous instrument, like simple assault, is a 'general intent' crime." 207 Neb. at 854, 301 N.W.2d at 589. Hoffman asserts that the blood-alcohol content of his body caused oxygen depletion in his brain so that his "thoughts were dominated with a relaxed, 'so-what' attitude making defendant feel invincible and inducing him to climb behind the wheel." Brief for Appellant at 18. That condition, Hoffman argues, was the result of intoxication to such an extent that, as a matter of law, Hoffman could not "intentionally" cause the death of Lana Wagner.

Whereas *State v. Duis, supra*, involved intentional infliction of bodily injury to another, the State has prosecuted Hoffman for "recklessly" causing bodily injury to another by means of a dangerous instrument contrary to § 28-309(1)(b) (Reissue 1985). According to the definition contained in § 28-109(19), *recklessly*, as used in § 28-309(1)(b), means conduct in which an actor disregards a substantial and unjustifiable risk of serious bodily injury to another, which risk, in view of the nature and purpose of the actor's conduct and circumstances known to the actor, involves a gross deviation from a standard of conduct which a law-abiding person would have observed in the actor's situation. Regarding the preceding characterization of a reckless act or conduct, Hoffman questions only the nature of a

defendant's state of mind relative to the reckless act or conduct necessary for commission of second degree assault, § 28-309(1)(b).

However, under § 28-309(1)(b) concerning a second degree assault based on a reckless act or conduct, an intent to inflict or cause bodily injury is not an element; rather, the reckless act or conduct, causing serious bodily injury, is the gravamen. A reckless act involves a conscious choice in a course of action, made with knowledge of a serious danger or risk to another as a result of such choice of action or with knowledge of the attendant circumstances which, to a reasonable person, would indicate or disclose a serious danger or risk to another as a result of the course of action selected. See, *People v. Mason*, 198 Misc. 452, 97 N.Y.S.2d 462 (1950); *State v. Bischert*, 131 Mont. 152, 308 P.2d 969 (1957); 22 C.J.S. *Criminal Law* § 31(5) (1961).

When one deliberately does an act which proximately causes and directly produces a result which the criminal law is designed to prevent, the actor is legally and criminally responsible for all the natural or necessary consequences of the unlawful act, although a particular result of the act was not intended or desired. *Hankins v. State*, 206 Ark. 881, 178 S.W.2d 56 (1944); *People v. Hickman*, 9 Ill. App. 3d 39, 291 N.E.2d 523 (1973); 22 C.J.S., *supra*, § 36.

Thus, for the purpose of a second degree assault contrary to § 28-309(1)(b), the requisite reckless act or conduct involves the actor's conscious choice in a course of action involving a dangerous instrument, which constitutes disregard of a substantial and unjustifiable risk to another, and does not require the actor's intent to cause serious bodily injury to another.

The fact that an accused, at the time of the criminal act charged, was drunk or intoxicated does not constitute, as a matter of law, a defense regarding an offense which requires a general or specific intent. *People v. Crosser*, 117 Ill. App. 3d 24, 452 N.E.2d 857 (1983). Ordinarily, voluntary intoxication does not justify or excuse a crime, unless an accused is intoxicated to an extent or degree that the accused is incapable of forming the intent required as an element of the crime

charged. *State v. Cain*, 223 Neb. 796, 393 N.W.2d 727 (1986).

When an element of a crime involves existence of a defendant's mental process or other state of mind of an accused, such elements involve a question of fact and may be proved by circumstantial evidence. See *State v. Lynch*, 215 Neb. 528, 340 N.W.2d 128 (1983) (location, nature, and number of wounds were circumstantial evidence of deliberate and premeditated malice necessary for first degree murder). Evidence established that Hoffman drank a considerable quantity of alcoholic beverage (root beer schnapps); drove his automobile on the city streets of Lincoln after consuming that alcohol; was conscious, alert, and conversing with hospital personnel after the fatal collision; and discussed the "Implied Consent Advisement Form" with Officer Bassett. Those facts provided the trial court with sufficient circumstantial evidence from which to draw the conclusion that Hoffman was able to make a conscious choice to drive his automobile, rather than refrain from operating his vehicle, and thereby disregarded the substantial risk of bodily injury to the public as the result of Hoffman's drinking alcohol combined with his driving an automobile. Even Hoffman does not claim that he was incapable of making a decision whether to drive his car. Hoffman's instilled euphoria from the alcohol, "inducing him to climb behind the wheel," is not a legal excuse for the reckless act which resulted in the unintended and tragic death of Lana Wagner. Hoffman's first assignment of error has no merit whatsoever.

## DOUBLE JEOPARDY

Both the Nebraska and U.S. Constitutions provide that no person shall be twice put in jeopardy for the same offense. See, Neb. Const. art. I, § 12; U.S. Const. amend. V.

As a prelude to cases involving a claim of double jeopardy, the U.S. Supreme Court, in *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932), adopted a "test of identity" to determine whether crimes separately charged were actually but one offense. In a multicount indictment, the government charged Blockburger with the sale of morphine hydrochloride to the same purchaser on successive days. As expressed by the Court in *Blockburger*:

It appears from the evidence that shortly after delivery of the drug which was the subject of the first sale, the purchaser paid for an additional quantity, which was delivered the next day. But the first sale had been consummated, and the payment for the additional drug, however closely following, was the initiation of a separate and distinct sale completed by its delivery.

The contention on behalf of petitioner is that these two sales, having been made to the same purchaser and following each other with no substantial interval of time between the delivery of the drug in the first transaction and the payment for the second quantity sold, constitute a single continuing offense. The contention is unsound. The distinction between the transactions here involved and an offense continuous in its character, is well settled . . . .

. . . .

Each of the offenses created requires proof of a different element. The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

284 U.S. at 301-02, 304.

Specifically addressing the issue of a lesser-included offense, this court, in *State v. Lovelace*, 212 Neb. 356, 359, 322 N.W.2d 673, 675 (1982), recognized a test similar to that enunciated in *Blockburger v. United States, supra*, namely: " 'To be a lesser included offense, the elements of the lesser offense must be such that it is impossible to commit the greater without at the same time having committed the lesser. . . .' "

Although the question arose in the context of a prior conviction as a bar to a subsequent prosecution for the same convicted offense, the U.S. Supreme Court, in *Brown v. Ohio*, 432 U.S. 161, 165, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977), made the following observations regarding the double jeopardy clause of the fifth amendment to the U.S. Constitution:

Because it was designed originally to embody the protection of the common-law pleas of former jeopardy,

see *United States v. Wilson*, 420 U.S. 332, 339-340 [95 S. Ct. 1013, 43 L. Ed. 2d 232] (1975), the Fifth Amendment double jeopardy guarantee serves principally as a restraint on courts and prosecutors. The legislature remains free under the Double Jeopardy Clause to define crimes and fix punishments; but once the legislature has acted courts may not impose more than one punishment for the same offense and prosecutors ordinarily may not attempt to secure that punishment in more than one trial.

The Double Jeopardy Clause "protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717 [89 S. Ct. 2072, 23 L. Ed. 2d 656] (1969).

In *Brown v. Ohio, supra,* the U.S. Supreme Court concluded: "Whatever the sequence may be, the Fifth Amendment forbids successive prosecution and cumulative punishment for a greater and lesser-included offense." 432 U.S. at 169.

Subsequently, in *Harris v. Oklahoma*, 433 U.S. 682, 97 S. Ct. 2912, 53 L. Ed. 2d 1054 (1977), the Supreme Court applied the double jeopardy clause of the fifth amendment to the U.S. Constitution in a case involving two criminal charges arising out of the same occurrence, robbery of a store. In an Oklahoma state court, Harris was convicted under the felony-murder rule on account of a homicide during Harris' use of a firearm to rob the store. Later, after denial of his motion to dismiss on the ground of double jeopardy, Harris was tried and convicted of "robbery with firearms." Harris contended that he was convicted of robbery with firearms when he was previously convicted on the felony-murder charge, that is, the homicide was proximately caused in perpetration of the robbery by use of a firearm. The state conceded that, in the murder-felony case, it was necessary to prove all the ingredients of the underlying felony of robbery with firearms. In reversing Harris' conviction for robbery with firearms, the Court stated:

When, as here, conviction of a greater crime, murder,

cannot be had without conviction of the lesser crime, robbery with firearms, the Double Jeopardy Clause bars prosecution for the lesser crime after conviction of the greater one. [Citations omitted.] "[A] person [who] has been tried and convicted for a crime which has various incidents included in it, . . . cannot be a second time tried for one of those incidents without being twice put in jeopardy for the same offense." [Citations omitted.] 433 U.S. at 682-83.

Considering a double jeopardy contention by implication, this court, in *State v. Aby*, 205 Neb. 267, 287 N.W.2d 68 (1980), reviewed convictions obtained on a two-count information against Aby, namely, first degree sexual assault (count I) and felony.debauchery of a minor (count II). The offenses arose out of a single occurrence involving the same victim. Aby successfully argued that his conviction on count I (sexual assault) barred his conviction on count II (debauchery). In reversing Aby's conviction on count II and ordering dismissal of that count, we stated:

First degree sexual assault in this case consisted of sexual penetration of a person less than 16 years of age by a person more than 18 years of age. § 28-408.03(1)(c), R.R.S. 1943. Felony debauching of a minor as charged in count II consisted of fondling or massaging in an indecent manner the sexual organs of a person under 16 years of age. § 28-929(2), R.R.S. 1943.

. . . The evidence of the State which proved the first degree sexual assault in this case also proved felony debauching of a minor although the element of penetration was not an element of the debauching offense. Thus, under the evidence in this case, debauching of a minor was a lesser-included offense of the sexual assault charge.

. . . .

. . . [A] defendant cannot be convicted of two degrees of the same offense or a crime and a lesser-included offense based upon the same act or transaction. In re Resler, 115 Neb. 335, 212 N.W. 765. A conviction or acquittal of the principal offense bars any prosecution or punishment for

a lesser-included offense.

For that reason the judgment on count II must be reversed and that count dismissed.

205 Neb. at 269-70, 287 N.W.2d at 70.

The common law doctrine of merger no longer exists. *See* 1 Burdick, Law of Crime § 85 (1946). That term, however, is now commonly used to refer to the constitutional prohibition, arising out of the double jeopardy clause, against punishing a person twice for the same act or offense.

*United States v. Belt*, 516 F.2d 873, 875 n.7 (8th Cir. 1975).

In *United States v. Belt, supra,* the question was whether convictions for robbery and larceny, obtained as the result of a multiple-count indictment based on a single incident, should be permitted to stand. In ordering that the larceny conviction must be vacated, the court stated in *Belt*:

The convictions for robbery and larceny, however, cannot both stand. "It is beyond dispute that larceny is a [sic] necessarily a lesser included offense of the crime of robbery." Walker v. United States, 135 U.S.App.D.C. 280, 418 F.2d 1116, 1120 (1969). [Citations omitted.] . . .

When, as here, a defendant is convicted of both a greater and lesser included offense, the conviction and sentence on the lesser charge must be vacated. [Citations omitted.]

516 F.2d at 875.

Courts in other states have reached the same conclusion as that expressed by this court in *State v. Aby, supra,* that is, in a prosecution on a multiple-count information, based on a single event or the same transaction, constitutional protection against double jeopardy prevents convictions for different degrees of the same offense arising out of the same event or transaction and prohibits a conviction for the lesser offense included in a greater offense; for example, see, *Tuckfield v. State,* 621 P.2d 1350 (Alaska 1981) (by a multiple-count information, convictions were obtained for rape and assault with intent to commit rape; held, double jeopardy prevented conviction of both the rape offense and its lesser-included offense of assault with intent to rape); *Bell v. State,* 437 So. 2d 1057 (Fla. 1983)

(multiple-count information charging defendant with trafficking in illegal drugs and sale of a controlled substance; held, where it is established that an offense is a lesser-included offense of a greater offense, the double jeopardy clause proscribes multiple convictions and sentences for both the greater and lesser-included offense); and *People v Jankowski,* 408 Mich. 79, 289 N.W.2d 674 (1980) (multiple-count information charging robbery and larceny; held, larceny is a lesser-included offense of robbery; double jeopardy clause prohibits multiple punishment for the same offense, which would result from convictions of both greater and lesser-included offenses).

## SECOND DEGREE ASSAULT AND MOTOR VEHICLE HOMICIDE

In examining Hoffman's contention concerning double jeopardy and the convictions in this case, we are not confronted with a prospective finding of a defendant's guilt or a theoretical verdict, as may be involved in a permissibly possible conviction by proper jury instruction on a greater offense and its lesser-included offense. See *State v. Brown,* 225 Neb. 418, 405 N.W.2d 600 (1987). What is involved in Hoffman's appeal are actual convictions for crimes arising out of the same act or transaction. Thus, in the present appeal, we are concerned with the reality of convictions obtained in the trial court, not with prospective activity in the course of a criminal trial, which at some point might be possible or could occur as a future disposition during trial.

Hoffman's conviction on count I is based on § 28-309(1)(b), a second degree assault for reckless causation of serious bodily injury to Lana Wagner, namely, her death. While the State did charge the crime of second degree assault (reckless causation of serious bodily injury) in count I, and by count II charged that Lana Wagner's death was caused by Hoffman's reckless driving, the district court actually found that the cause of Lana Wagner's death was Hoffman's drunk driving, which was an alternative allegation to reckless driving as the cause of Lana Wagner's death.

The district court found Hoffman guilty of motor vehicle homicide (count II) based on drunk driving, a violation of

§ 39-669.07, because Hoffman caused Lana Wagner's death by his operating a motor vehicle while he was "under the influence of alcoholic liquor" and while Hoffman had "more than ten-hundredths of one percent by weight of alcohol in his body fluid, namely, .39 of one percent . . . ." To obtain the motor vehicle homicide conviction, the State proved that Hoffman was guilty of drunk driving—operating a motor vehicle while he was intoxicated. Intoxication, whether a motorist's physical and mental condition characterized as "under the influence of alcoholic liquor" or a motorist's having "ten-hundredths of one percent by weight of alcohol in [the motorist's] body fluid," see § 39-669.07, is not an element which must be proved to obtain a conviction for reckless causation of serious bodily injury by means of a dangerous instrument, the second degree assault condemned by § 28-309(1)(b). Conversely, the reckless act or conduct involved in a second degree assault may occur without the actor's ingestion of alcohol, but, as an alcohol-related offense, ingested alcohol is necessary for a violation of the drunk driving statute, § 39-669.07. It is clear that the elements of a second degree assault, based on a reckless act or conduct, do not necessarily include the presence of alcohol in the actor. It is equally clear that drunk driving, as a predicate offense in a motor vehicle homicide charge, does not necessarily involve a reckless act or conduct, as defined in § 28-109(19) of the Nebraska Criminal Code. Therefore, the findings of Hoffman's guilt on count I and count II constituted two convictions for two different and elementally unrelated criminal offenses arising out of the same event or transaction. Under the circumstances, determination of whether second degree assault, prohibited by § 28-309(1)(b), is a lesser offense included in motor vehicle homicide predicated on reckless driving, or vice versa, is not required for disposition of Hoffman's appeal. Nonetheless, constitutional protection against double jeopardy has not been denied to Hoffman by his convictions for second degree assault and motor vehicle homicide.

## MOTOR VEHICLE HOMICIDE AND DRUNK DRIVING

In finding Hoffman guilty of motor vehicle homicide (count

II), the district court found Hoffman guilty of drunk driving in violation of § 39-669.07, and also found Hoffman guilty of the separate charge of drunk driving alleged in count III. There is no question that the drunk driving, as a violation of a Nebraska statute necessary for the crime of motor vehicle homicide charged in count II, was the identical prohibited act and the exact offense charged in count III. Consequently, count II and count III involved the same act—drunk driving. If the predicate offense is drunk driving in violation of § 39-669.07, a charge and conviction of motor vehicle homicide, analytically compared with the offense of drunk driving, requires the additional element of homicide caused by such drunk driving. Thus, when the predicate offense for motor vehicle homicide is drunk driving in violation of § 39-669.07, drunk driving is a lesser-included offense in motor vehicle homicide. See, *State v. Best*, 42 Ohio St. 2d 530, 330 N.E.2d 421 (1975); *People v Dickens*, 144 Mich. App. 49, 373 N.W.2d 241 (1985). Consequently, commission of motor vehicle homicide, as a result of a violation of § 39-669.07, necessarily includes the offense of drunk driving. The constitutional protection against double jeopardy, therefore, applies to Hoffman's convictions on counts II and III. In Hoffman's case, the district court imposed consecutive sentences for all the convictions. The consecutive sentences imposed on Hoffman for motor vehicle homicide and drunk driving are cumulative sentences for the same offense and constitute separate and multiple punishments for the same offense, a denial of the protection against double jeopardy afforded by the Constitutions, both state and federal. See *Brown v. Ohio*, 432 U.S. 161, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977). We must, therefore, reverse the district court's judgment for Hoffman's conviction and sentence for drunk driving in violation of § 39-669.07 (count III) and remand this matter to the district court for dismissal of count III contained in the information against Hoffman.

MULTIPLE-COUNT INFORMATIONS

Nothing we have stated in this opinion should be construed as disapproval of a multiple-count information; preclusion of a multiple-count information charging more than one offense arising from the same transaction; or prohibition against a trial

under a multiple-count information. As aptly expressed by the Supreme Court of Washington in *State v. Johnson*, 92 Wash. 2d 671, 680-81, 600 P.2d 1249, 1254 (1979):

> [T]he prosecutor should not be denied the right to charge the separate offenses, for he may fail to persuade the jury that the greater offense was committed, while succeeding in proving the ancillary crimes. There is no reason to deprive him of this opportunity. . . . A complicated criminal transaction necessarily gives rise to multiple charges and instructions, and this is a result which it is difficult to avoid if justice is to be accorded both the defendant and society.

### CLAIM OF EXCESSIVE SENTENCE

As his final assignment of error, Hoffman contends that his sentences are excessive, especially since the court imposed consecutive sentences.

"[I]n the absence of an abuse of discretion, a sentence imposed within statutory limits will not be disturbed on appeal." *State v. Dillon*, 222 Neb. 131, 136, 382 N.W.2d 353, 357 (1986). " 'It is within the discretion of the trial court to direct that sentences imposed for separate crimes be served consecutively, as opposed to concurrently.' " *State v. Irish*, 223 Neb. 814, 817, 394 N.W.2d 879, 881 (1986).

Hoffman asserts that he has "no prior criminal record." Brief for Appellant at 22. The presentence report on Hoffman contains five pages of his undenied and deplorable history of convictions. Rather than a misrepresentation that Hoffman does not have a criminal history, we will view Hoffman's assertion of "no prior criminal record" as a partially correct statement that Hoffman has no record of a previous felony conviction. At the time of sentencing, Hoffman was an unmarried 29-year-old home-maintenance repairman. Hoffman has been twice convicted of petit larceny and has had one conviction for public intoxication. Additionally, Hoffman was convicted of leaving the scene of an accident (1983) and theft (1984). Hoffman has five convictions for driving under a suspended operator's license or the amended charge of driving with no operator's license, resulting in jail sentences imposed on two of those convictions. Even more conspicuously, Hoffman

has been convicted for drunk driving in the years designated and with his bodily blood-alcohol content as indicated: 1975, .13 percent; 1979, .28 percent; 1981, .17 percent; and 1984, .129 percent. Hoffman's record of convictions and Lana Wagner's death as mute testimony were undoubtedly considered by the district court in determining and weighing the sentences to be imposed. We find no abuse of discretion, either in the separate sentences imposed on Hoffman for his convictions of second degree assault (count I) and motor vehicle homicide (count II) or in the imposition of consecutive sentences for the convictions on those counts.

Because there is no error in Hoffman's convictions and sentences on count I and count II, the judgment of the district court regarding each of those counts is affirmed. For the reason previously given, the district court's judgment of conviction and sentence on count III is reversed, and, concerning count III only, this matter is remanded to the district court with direction to dismiss count III of the information against Hoffman.

JUDGMENT ON COUNTS I AND II AFFIRMED.
JUDGMENT ON COUNT III REVERSED AND
REMANDED WITH DIRECTION TO DISMISS.